GEORGE S. HAZARD, AS RECEIVER OF THE NEW YORK AND ERIE BANK, RESPONDENT, v. JOHN B. MANNING, APPELLANT.

*Bailee — lien of — not lost, because of not being expressed in receipt.*

One Briggs, the owner of certain barley, which he had transferred to the plaintiff as collateral to a loan, being desirous of having the same malted, an agreement was entered into between Briggs, the president of the plaintiff, and the defendant, by which the latter agreed to malt the barley and receive twenty cents per bushel for so doing. At that time he delivered to the plaintiff a paper, by which he agreed to hold the malt subject to the written order of the plain-

tiff, nothing being stated therein as to the charges for malting or any lien therefor. The defendant having received and malted the barley, refused to deliver the same until his charges for so doing were paid. *Held*, that the law gave him a lien upon the malt for the amount agreed to be paid, and that the mere absence of a reservation of such lien in the receipt, by which he agreed to hold it subject to plaintiff's order, did not deprive him thereof.

APPEAL from a judgment of the Superior Court of Buffalo, entered upon a verdict for the plaintiff directed by the court.

*H. C. Day*, for the appellant.

*E. C. Sprague*, for the respondent.

MULLIN, P. J. :

This action was commenced in the Superior Court of Buffalo, where judgment was rendered in favor of the plaintiffs.

Prior to the 4th day of November, 1871, Henry F. Briggs was indebted to the N. Y. and Erie Bank for loans of money, to secure which Briggs had given a quantity of whiskey as collateral security.

The president of the plaintiff applied to Briggs for further security, and he informed the president that he had in the Niagara elevator a quantity of barley that he would turn out for that purpose. Briggs held the receipt of the elevator company for the barley.

Briggs had talked of malting the barley, and he called on defendant and requested him to go with him to the bank and there they met Ganson, the president of said bank.

Defendant was engaged in the business of converting barley into malt, at his malt-house in Buffalo.

Ganson inquired of defendant the amount of malt that could be made from 1,500 bushels of barley, and was told they would make 1,725 bushels of malt. Defendant told him the price of malt and of barley, and it was arranged that Briggs should transfer to defendant the elevator receipt, and defendant should go on and malt the barley and give to the bank a paper, of which the following is a copy :

"BUFFALO, *Nov.* 4, 1871.

"Received in store in my malt-house, which is situated on the Terrace, in this city, from H. F. Briggs, 1,725 bushels of malt, which I am to hold subject to written order of the New York and

Erie Bank of this city. I am to assume no risks as regards fire or the elements.

(Signed) "JOHN B. MANNING."

Briggs indorsed and delivered to defendant the elevator receipt.

The defendant testified on the trial, that at the interview in the bank between Briggs, defendant and Ganson, plaintiff's president, the latter requested defendant, as he, Ganson, had the papers, and all the papers made in Briggs' account, to give him a warehouse receipt for the malt, giving as a reason that he wanted the matter closed up that day. He, Ganson, requested Briggs to transfer to defendant the elevator receipt and obtain a policy of insurance on the malt, which should be secured to the defendant. The receipt was indorsed over to the defendant, together with a policy of insurance.

The defendant got the barley and malted it and notified Ganson that he had so done, and presented to him a bill for the same. Ganson made excuses for not paying, on that and on several subsequent occasions, and finally, refused altogether to pay the bill, saying that Briggs was the person who should pay.

While the defendant was trying to get pay for malting from Ganson, he told him (Ganson) he should charge for storage; and in reply to the inquiry as to how much, he told him one-fourth of a cent a bushel for each ten days or part thereof.

This charge Ganson declined to pay, but stated his willingness to pay a fair price for storage, and made an offer of an amount which defendant refused to accept.

Plaintiff, on December the 8th, 1873, sold to one Matthews the malt mentioned in the foregoing receipt, and gave him an order on defendant requesting him to deliver the same to said Matthews.

The order was presented, and defendant declared his readiness to deliver on payment of his charge for malting and storage, but Matthews refused to pay the same and defendant refused to deliver. It was on this occasion that Ganson said he was willing to pay a reasonable price for storage; and something was said and done about making a tender to the defendant, but no specific sum seems to have been tendered.

The plaintiff's counsel objected in time to the admission of the parol evidence, as to what transpired at the bank between Ganson,

defendant and Briggs as to the transfer of the elevator receipt, malting the barley and the price of the same, as it tended to contradict the writing signed by defendant and delivered to Ganson, a copy of which is above given.

The evidence was first taken subject to the objection, and afterwards the objection was sustained and the evidence excluded.

The defendant's counsel excepted, on the ground that the evidence excluded does not tend to contradict but to explain the writing.

The counsel for the defendant then asked the court to direct a verdict for the defendant, on the ground that the undisputed evidence showed that plaintiff had failed to make a proper tender to discharge defendant's lien on the malt. The court refused and defendant's counsel excepted.

The defendant's counsel then asked leave to go to the jury on the question of tender, which was refused, and defendant's counsel excepted.

The court held that the only question on the evidence, on which defendant could go to the jury was the one of damage, to which ruling defendant's counsel excepted.

The defendant moved at the close of plaintiff's evidence for a nonsuit, on the grounds :

First. That plaintiff failed to make out a cause of action.

Second. There is no evidence of any tender.

Third. That no tender was made, according to law, of any amount.

The motion was denied and defendant's counsel excepted.

The court directed the jury to find the title and right of possession in the plaintiff, and a verdict for the return of the property to the plaintiff; and if a return could not be made they should find for plaintiff for the value of the property at the time it was demanded of the defendant, with interest from the time of the demand ; the amount the defendant was entitled to for storage at the same date, with interest. To each of said instructions defendant's counsel excepted.

The defendant's counsel asked the court to charge the jury that it was in their discretion whether interest should be allowed. The court refused so to charge, and defendant's counsel excepted.

The jury found a verdict as directed by the court. Judgment was entered thereon, and from it the defendant appeals to this court, two of the judges of the Superior Court being prohibited by law from hearing the case.

The important question in this case is, had the defendant a lien on the malt for his charges for converting the barley into malt?

The lien for storage was conceded on the trial, and the amount was allowed by direction of the court, by deducting it from the value of the malt.

The barley was transferred to the defendant by the consent of Briggs and Ganson, to be made into malt by him, and for his services he was to receive twenty cents per bushel. Briggs and the bank, represented by Ganson, were the only persons who had any interest, legal or equitable, in the barley. There was no agreement that a lien for the labor, etc., should not be had by the defendant for his charges. Under such circumstances the defendant had, and has a lien upon the malt, and he is entitled to the possession of it until that lien is discharged by payment of his charges.

Kent, in his Commentaries (vol. 2, 635), says: "It is now the general rule that every bailee for hire, who by his labor and skill has imparted an additional value to the goods, has a lien upon the property for his reasonable charges. * * * The same right of a particular or specific lien applies to a miller * * * or whosoever takes property in the way of his trade or occupation, to bestow labor or expense upon it."

The answer of the plaintiff to this claim of lien is, that by the writing given by defendant to the plaintiff, there is an absolute agreement to deliver the malt without regard to a lien for malting.

It is true that the writing is silent as to a lien for charges, and that it contains an agreement to deliver the malt to defendant, on demand, upon the written order of the plaintiff.

No express agreement was necessary to create the lien; the law gave it to the defendant upon his converting the barley into malt; and that lien continued until waived or discharged by payment.

It was not necessary to the right of defendant to a lien that he should reserve it in the writing. It was an incident of the agreement between the parties, and the law implies that the delivery

promised to be made was upon payment of the charges, in the absence of any express waiver, or circumstances from which a waiver could be fairly inferred.

It is insisted by the plaintiff's counsel that the evidence of the defendant as to what transpired at the time the writing was signed and delivered by the defendant was incompetent, as it contradicted the writing given by the defendant, in that the writing contemplated and provided for a delivery of the malt without any condition whatever, whereas the parol evidence obliged defendant to deliver to the plaintiff only on payment of the charges of defendant in making the malt.

If I am right in holding that the law gave the lien to the defendant, and not the contract between the parties, the parol evidence did not vary or contradict the writing.

The defendant, having a lien on the malt, was entitled to hold it until it was discharged by payment.

There was no tender of the charge for malting, and there was therefore no question for the jury on that subject.

The judgment must be reversed and a new trial granted, costs to abide event.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

Judgment reversed and new trial granted, costs to abide event.